# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2086 | **DATE** | 1/8/2002 |
| **CASE TITLE** | UNITED STATES vs. JEFF BOYD | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendant's motion (4-1) to recuse is granted. Enter Memorandum Opinion and Order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 1 1 2002 | 13 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

United States of America,

    Plaintiff,

      v.

Jeff Boyd, et al.,

    Defendants.

01 C 2086
(No. 89 CR 908-4)
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In 1995, I denied various motions to recuse in a criminal case charging several

defendants with a massive, long-running conspiracy. The history of the case can be found

in *United States v. Boyd*, 208 F.3d 638 (7th Cir. 2000) which affirmed the convictions and

sentences entered in the proceedings before me. There is more background to be found in

the affirmance of a grant of a new trial after previous verdicts of guilty and sentencings

by another judge. *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995)

In a lengthy opinion which I append to this order[1], I denied the motions to recuse

and, prior to trial, the Court of Appeals declined to issue mandamus to overturn my

decision. In this Circuit, that ends the matter with respect to the disqualification under §

455(a) of the Judicial Code. The Court of Appeals which heard the direct appeal held

(over dissent) that it had no power to reconsider the matter. It did address two other

grounds of disqualification – personal knowledge of disputed facts of the case and (as a

government employee) prior participation in the proceedings or expression of an opinion



on the merits of the case. The Court of Appeals found that neither ground required recusal. In another case, the Court had held that my failure to recuse was not plain error. *United States v. Franklin*, 197 F.3d 266 (7th Cir. 1999).

So why do I write this decision instead of summarily denying the motion to recuse?

The reason is found in the latest opinion. The dissenting judge thought that the rule barring review of a § 455(a) ruling save by mandamus was flawed and ought to be abandoned. If it were abandoned, then the dissenter would have held that I should have recused myself. His reasons why I should recuse came from his adoption of language in the majority opinion. The majority offered what it plainly understood to be dicta when it said:

> "[W]e wish to emphasize our belief that compliance with [§ 455(a)] is essential to the perceived legitimacy of the judicial process, expecially when the defendants are vicious criminals facing long sentences and the prosecution has been marred by irregularities. It would have been far, far better for Judge Zagel to have recused himself in light of his earlier involvement with the parallel proceeding against the El Rukns and the fact that two of the El Rukns involved in that proceeding testified in the present case. But the panel that considered the petition for mandamus ruled that there was no violation of section 455(a), and while we disagree with the ruling, the issue of its soundness is not before us." 208 F.3d at 648.

I have, over time, carefully considered this view held by three Circuit Judges. After this re-examination, I adhere to my opinion that I should not have granted the motion to recuse at trial for perceived partiality. And the defendants received an error-free

trial, and the sentences which I imposed were identical to those imposed by a prior judge whom no one sought to recuse.

Yet even this does not end the matter. Section 455(a) does not speak to actual lack of impartiality. It mandates disqualification of a judge in any proceeding in which the judge's "impartiality might reasonably be questioned." In my view, there was no ground on which anyone could reasonably question my impartiality. But on April 3, 2000, the three Circuit Judges expressed the view that I should have recused myself. And this view, whether right or wrong, expressed in a published opinion, is a fact which enters into the calculus of what might cause a reasonable questioning of impartiality. There is the fact that three other Circuit Judges earlier concluded I should not recuse. But the April 3 opinion was expressed in a particularly forceful way, particularly in light of the fact that two of the judges thought that expression of their views was warranted despite the fact that they were not necessary to the decision of the case.

One of my colleagues thinks that I should disregard the dicta and that the majority judges should not have written it. I disagree on both counts. Dicta cannot be disregarded in the arena of public perception. And I would be loath to criticize an appellate judge for expressing strongly held views in dicta. It is true that we are bound only by holdings but we and other judges may be persuaded by dicta. What would be wrong, and is not present here, is dicta that masquerades as a holding.

While the question is a close one, it is my judgment that the published views of the Circuit Judges expressed on direct appeal from the conviction in these cases raise the real possibility that my impartiality in continuing to preside over the post-conviction proceeding might reasonably be questioned. While I have no doubt that I would be impartial and I do not read any opinion on appeal or on mandamus to question my actual impartiality, my continuing to preside after the Court of Appeals' opinion on direct appeal is not consistent with the perception of impartiality standard embodied in § 455(a).

The motion to recuse is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: 8 Jan 2002

1.

## **MEMORANDUM AND OPINION**

I have before me motions for recusal. I treat the motions as having been made under 28 U.S.C. §§ 144 and 455(a) & (b)(1).

### (A)

Section 144 requires a judge to recuse himself if a party files a timely, sufficient and signed affidavit that the judge has "a personal bias or prejudice" against him and is accompanied by a certificate of counsel of record that the affidavit is made in good faith. The law is clear that in passing on the legal sufficiency of the affidavit, the judge must assume that the factual averments it contains are true, even if he knows them to be false. United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993); United States v. Balistrieri, 779 F.2d 1191, 1199 (7th Cir. 1985), cert. denied, DiSalvo v. United States, 475 U.S. 1095 (1986). An affidavit is sufficient if it avers facts that, if true, would convince a reasonable person that bias exists. Sykes, 7 F.3d at 1339; Balistrieri, 779 F.2d at 1199. Courts are ordinarily wary of rules which require them to accept as true that which they know is false, thus § 144 has been narrowly construed. Sykes, 7 F.3d at 1339; Balistrieri, 779 F.2d at 1199. While the judge must accept the facts alleged as true, the judge need not accept conclusions, opinions or rumors. United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir. 1990), quoting Balistrieri, 779 F.2d at 1199. Furthermore, the facts must be plead with particularity and must be definite as to times, places, persons and circumstances. Barnes, 909 F.2D at 1072, citing Balistrieri, 779 F.2d at 1199. Furthermore, the factual averments must show that the bias is personal rather than judicial and that it stems from an extrajudicial source.

Balistrieri, 779 F.2d at 1199.

Section 144 is heavily weighted in favor of recusal and is not discretionary. The judge may only pass on the timeliness and sufficiency of the affidavit. Id. at 1199. However, the party seeking recusal bears some burden as the statute is to be strictly construed since a judge is presumed to be impartial. Id.

Section 455 is the comprehensive federal recusal statute. Section 455(a) requires a judge to recuse himself in any proceeding in which the judge's impartiality might reasonably be questioned. Section 455(b)(1) requires disqualification when the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. The remaining subsections of § 455(b) detail several specific circumstances in which the judge must recuse himself.

Section 455(b)(1) duplicates the grounds of recusal set forth in § 144 with the phrase "personal bias or prejudice," but places the obligation to identify its existence upon the judge himself. Liteky v. United States, 114 S.Ct. 1147, 1153 (1994). The courts have found the phrase to have the same meaning in both statutes; however, the strict procedural requirements of § 144 do not apply to § 455(b)(1). Balistrieri, 779 F.2d at 1202. Section 455(b)(1) dispenses with the requirement that the judge take all the factual averments of the affidavit as true. Balistrieri, 779 F.2d at 1202. Under § 455, "the judge is free to make credibility determinations, assign to the evidence what he believes to be its proper weight, and to contradict the evidence with facts drawn from his own personal knowledge." Balistrieri, 779 F.2d at 1202. However, the standard of proof is identical to that in § 144, "whether a reasonable person would be convinced that the judge is biased." Id.

Section 455(a) is a catch-all recusal provision concerned with the appearance of bias, not

actual bias. Liteky, 114 S.Ct. at 1153. It is not intended to protect litigants from actual bias in

their judge but rather to promote public confidence in the impartiality of the judicial process.

Balistrieri, 779 F.2d at 1204, citing H.R. Rep. No. 93-1453, 93d Cong., 2d Sess. (1974),

reprinted in 1974 U.S. Code Cong. & Ad. News 6351, 6354-55. Under § 455(a) the rule is

"whether an objective, disinterested observer fully informed of the facts underlying the grounds

on which recusal was sought would entertain a significant doubt that justice would be done in the

case." Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985).

(B)

Defendant Noah Robinson has filed a purported § 144 affidavit. The strict procedural

requirements of § 144 are designed to protect the integrity of the judicial system and prevent

abuse of the recusal procedure. In the Matter of Searches Conducted on March 5, 1980, 497

F.Supp. 1283, 1288 (E.D. Wis. 1980). I hold that he is not entitled to the presumption of the

truth of its facts because he has not satisfied the requirement that the affidavit must be

accompanied by a certificate of counsel of record stating the affidavit was made in good faith. 28

U.S.C. § 144. Failure to submit counsel's certificate of good faith alone is grounds for denying

his motion. United States v. York, No. 86 CR 315, 1988 WL 105342 *1 (N.D. Ill. Sept. 20,

1988), citing Balistrieri, 779 F.2d at 1199; Martin-Trigona v. Shiff, 600 F.Supp. 1184, 1187

(D.D.C. 1984).

Mr. Robinson represents himself and he has no counsel of record. The affidavit was

originally accompanied only by Mr. Robinson's own certification. Later he filed a certificate by

Robert P. Aulston, a lawyer licensed to practice in Louisiana. This lawyer is not counsel of

7

record within the meaning of the statute. The lawyer may have filed a "limited" appearance form for defendant Noah Robinson "for Writ of Habeas Corpus and Release on bail pending appeal status." Indeed, the transcript cover page which Mr. Robinson filed with this court shows no appearance of counsel for Mr. Robinson. The cover page reads:

APPEARANCES:

For the Plaintiff:

HON. JAMES B. BURNS

United States Attorney, by

MR. BARRY RAND ELDEN

Assistant United States Attorney

(219 South Dearborn Street

Chicago, Illinois 60604)

For the Defendant:

MR. NOAH ROBINSON, pro se

Court Reporter:

MS. MARY M. GALLAGHER

(219 South Dearborn Street

Room No. 1944

Chicago, Illinois 60604)

(312) 663-0049

ALSO PRESENT:

MR. ALLAN A. ACKERMAN

MR. ROBERT P. AULSTON

I find there is no counsel of record for Mr. Robinson. I leave to one side the question of whether Mr. Aulston could appear as counsel in this case assuming he is the same Aulston mentioned in the indictments.

(C)

Noah Robinson also seeks recusal under § 455 on <u>four</u> bases.

1. The relationship of counsel for another defendant (Felix Mayes) to myself.

2. The absence of random selection of myself as presiding judge.

3. The nature of investigations done by the Illinois State Police during the time I was its Director.

4. The statements made by myself at a press conference in 1986.

1. The legal relationship of counsel for defendant Felix Mayes and myself no longer exists. At one time counsel was married to my wife's sister. Under the Code of Conduct for United States Judges and § 455, a judge must disqualify himself when "a person within the third degree of relationship to him is acting as a lawyer in the proceeding." The relationship between Mayes' counsel and myself was equivalent to that of brother and would require disqualification and, during the existence of that relationship, I did not sit in cases in which Mr. Felix Mayes' counsel appeared. The marriage which formed the basis of this relationship has been legally dissolved and, with it, the relationship. Disqualification is no longer required.

Indeed, I doubt that any defendant other than Felix Mayes has standing to object to my presiding over this case because of the former relationship between his counsel and myself and he has not sought recusal on this particular ground.

Mr. Robinson further alleges that ill feelings exist between court and counsel because of the end of counsel's marriage. Mr. Robinson makes inferences about the sentiments of various persons toward counsel and inferences that those sentiments are to be imputed to the court. Even if Mr. Robinson had filed an appropriate § 144 affidavit, these allegations are merely conclusions and opinions, they are not facts, and thus under § 144 are not to be taken as true. <u>Balistrieri</u>, 779 F.2d at 1199. Furthermore, under § 455(b)(1), a judge is free to contradict the evidence with facts drawn from his own personal knowledge, <u>Balistrieri</u>, 779 F.2d at 1202, and I find Mr. Robinson's statement about hostile exchanges between counsel and others is, to the best of my knowledge, untrue and, in fact, denied by Mr. Felix Mayes' counsel. A reasonable person would not be convinced that I would be biased in this case due to the fact that counsel for Mayes was once married to my sister-in-law, therefore, §§ 144 and 455 would not compel recusal under these circumstances.

Of course, the fact remains that Mr. Felix Mayes' counsel is no longer the husband of my sister-in-law and the law does require me, and Mr. Robinson asks me, to search my conscience to determine whether, in fact, there is resentment, ill-feeling or low opinions which might affect my ability to judge the merits of counsel's arguments on behalf of Felix Mayes and which might spill over into the cases of other defendants. <u>Smith v. Insurance Co. of North America</u>, 213 F.Supp. 675, 700 (M.D. Tenn. 1962) (judge accused of bias and prejudice must examine his conscience), aff'd in part, rev'd in part on other grounds 334 F.2d 673 (6th Cir. 1964), <u>cert. denied</u>, 85 S.Ct. 895 (1965). I have searched my conscience and find no sentiment which would preclude or indeed make difficult the judicious consideration of the professional acts of Felix Mayes' counsel. He has appeared before me in other cases appropriately and so will appear in this one.

To the extent that Boyd, Cooksey, Craig, Knox, both Mayes, and all other defendants who join in Robinson's motion propose these grounds for recusal, I deny their motions.

2. Mr. Robinson avers "the general public would <u>never</u> believe Zagel's "selection" to be a random chance, a pure coincidence, and <u>neither</u> does defendant Noah Robinson, to be perfectly honest. Just as an aside, Judge Zagel's office chambers adjoins, is very next door to, Judge Aspen's chambers. Now, <u>the latter might</u> be a coincidence, but odds are astronomical that <u>the former</u> would likewise be." (Emphasis in original.)

Mr. Robinson is asserting, I think, that this Court's random assignment procedures have been subverted and this is a ground for recusal under § 455(a). Perhaps, in the first sentence, he means only to say that he "thinks" so and that the general public would "think" so, but his second sentence appears to contain an assertion of fact that the odds are astronomical against the chance that random selection (coincidence) is the reason this case is before me. It is true that Judge Aspen and I both had courtrooms on the 19th floor, however, that is all that is true about this claim. Our chambers were not "very next door" unless one wishes to forget about Judge Marovich. Furthermore, the Clerk of this Court has assured me that ordinary random selection procedures were used. Thus, there is not even an appearance of impartiality. <u>Balistrieri</u>, 779 F.2d at 1204. Consequently, there is no ground for recusal here.

Even if this claim were made under § 144, where all factual averments must be taken as true, Mr. Robinson's assertion of facts are merely illusory as no facts are stated with particularity as required by § 144. Mr. Robinson only asserts opinions and conclusions that there is some impropriety involved in the fact that this case is before me and thus again he fails to show bias or prejudice. <u>Balistrieri</u>, 779 F.2d at 1199.

3.    Mr. Robinson's third and fourth allegations of bias are related and will be discussed

together. Mr. Robinson raises an issue of personal bias based on the nature of certain

investigations by the Illinois State Police while I was its director and statements I made at a 1986

press conference. The other defendants raise a similar argument, but Mr. Robinson raises the

matter in a broader way and I will consider the broader claims first.

On Thursday, June 19, 1986, I was Director of the Illinois State Police and Richard M.

Daley was the States Attorney of Cook County. We held a press conference to announce the

arrest of 18 persons on a charge of acting as unlicensed security officers. Some of them were

arrested as well for unlawful use of weapons for carrying firearms. At the press conference, it

was related that the investigation began when one individual (thought by police to be an El

Rukn) applied to the Illinois State Police for a state firearm owner's identification card.

The ensuing investigation, it was said, led to discovery of Security Maintenance Services,

Inc. ("SMS") which was operating as a security guard firm without benefit of the required state

license. The State Police represented themselves to SMS as a company interested in hiring

security guards for a jewelry show. Both the company and the show were fictitious. Eighteen

persons showed up to provide security services. They were arrested.

According to newspaper coverage, States Attorney Daley said, "The idea of El Rukn gang

members wearing badges and uniforms and offering their services to protect lives and property

would be laughable if not for the risk every citizen takes, when coming in contact with these

various criminals."

According to newspaper coverage, I said, "street gangs have grown to rival organized

crime in the scope of their operations, and in the savagery in which they control entire sections of

the city." Neither the Chicago Tribune nor the Chicago Defender mentioned the name of Noah Robinson, and there is no evidence that his name was mentioned at either the press conference or in a press release and certainly not in an accusing manner. Nor does Mr. Robinson allege that I mentioned his name at the press conference. The Chicago Sun Times wrote about the story and it reported that the building occupied by SMS was "owned by millionaire businessman Noah Robinson." Mr. Robinson denied that the building was a headquarters for the gangs' illegal security company, and he praised the quality of the security work done by one of the persons who was arrested.

Mr. Robinson has included the various State Police reports detailing the investigation. These reports do not bear an indicia that they were sent to or examined by the Director of State Police. It would be truly exceptional for reports to be examined by the Director in a case of this sort and I did not examine them.

None of the defendants in this case was charged or arrested in the security guard case. There are references in reports to a person (wrongly identified in earlier reports as Noah Jackson) who I believe to be Noah Robinson. These references appear only in statements of SMS individuals who cited Mr. Robinson's name as a source of reference who had retained SMS and who offered to introduce an agent to Mr. Robinson. The agent accepted the offer, but the reports contained no record of such a meeting and I am unaware if such a meeting ever occurred.

None of the actions of the officers in connection with the security guard case were submitted to me for approval or discussed with me. An investigation of this type would invariably be supervised by agents well below the level of the Director. The special agents involved in these cases would be subordinate to and supervised by Master-Sergeants, Lieutenants

and a Zone Commander (usually a Captain). Above the Zone Commander is an Area Commander (usually a Major). The Area Commander will report to a Deputy Superintendent or to a Superintendent who in turn will report to the Assistant Director and thence to the Director. As is characteristic of most large police agencies, personal involvement by the head of the department in any given case is the rare exception and not the rule. Mr. Robinson seems to recognize this because in order to make his claim of my personal involvement in the security guard case, he asserts that various acts were taken under my "auspices." This is true, at least at some level of abstraction, but it is not the equivalent of personal involvement. And it is the degree of my personal involvement in the security guard case that is important. Announcement of the results of the investigation is not personal involvement. Furthermore, Mr. Robinson never asserts any personal involvement by me in the investigations that led to the current charges. See Balistrieri, 779 F.2d at 1201 n.8 (Judge's lack of involvement when he was Attorney General in investigation that led to current charges rules out inference of personal stake in outcome of case); Margoles v. Johns, 660 F.2d 291, 297 (7th Cir. 1981) ("even personal and direct involvement in proceedings creating the grounds for animosity toward a party does not necessarily require recusal."), cert. denied, 455 U.S. 909 (1982); United States v. Masters, 88 CR 0500, 1988 WL 79612 *3 n.2 (N.D. Ill. July 25, 1988) (No obligation for district court judge to recuse himself where he had served as head of a large, departmentalized agency, and played no role in the investigation at issue.)

Even more important is that no defendant in this case before me was charged or arrested in the security guard case. Even if there had been extensive personal involvement by me in the security guard case, the fact remains that no accusation of wrongdoing was ever levied by me

15

against any of the defendants in this case.

I would add that I do not recall <u>any</u> case and defendants (who would surely know) have never cited any case in which, during my tenure as Director, the State Police ever arrested any of these defendants on any charge. Moreover, although I rarely participated in decisions to designate particular persons as appropriate targets of criminal investigation, I do recall that I never discussed or approved the targeting of any of the defendants in this case. The geographic focus of most alleged El Rukn activity, in this case (and other reported cases) would ordinarily mean that other law enforcement agencies, rather than the State Police, would be primary investigators. <u>United States v. McAnderson</u>, 914 F.2d 934, 939 (7th Cir. 1990) (placing El Rukns headquarters at 3947 South Drexel in Chicago); <u>People v. J.L. Houston</u>, 541 N.E.2d 1191, 1195 (1989) (El Rukns known to be a Chicago street gang); <u>O'Donnell v. Field Enterprises Inc.</u>, 491 N.E.2d 1212, 1214 (1986)(same).

Furthermore, it is clear that the events related in the affidavit bear no relationship to the current charges against Mr. Robinson, and thus a reasonable person could not be convinced that I would be biased in this case. <u>Balistrieri</u>, 779 F.2d at 1200-01. The investigation that took place under my tenure as Director of the State Police occurred nine years ago and led to the discovery of an unlicensed security guard firm which had some ties to the El Rukns. The current charges against Mr. Robinson and other defendants are for murder, conspiracy to murder, kidnapping and intimidation in relation to their activities with the El Rukns. As already stated, none of the defendants in this case were charged or arrested in the security guard case. The facts here are similar to those in <u>Balistrieri</u> where the previous targets of enforcement activity related in the affidavits were different than those targets charged in the indictment in question and occurred ten

to twelve years earlier. Thus, the court found that the remoteness of time and circumstances was sufficient to rule out any inference that the judge had a personal stake in the outcome of the case particularly because the judge was not involved in the investigations that led to it. Balistrieri, 779 F.2d at 1201 n.8.

The more narrow point, raised vaguely by Mr. Robinson and more explicitly by co-defendants, relies on what is in fact true. I was Director of the Illinois State Police which conducted an investigation of some El Rukns, which resulted in arrests and charges by the States Attorney. I participated in announcing the charges and stated that "street gangs have grown to rival organized crime in the scope of their operations, and in the savagery in which they control entire sections of the city." These statements, it is said, make me biased against anyone alleged to be part of the El Rukn organization and for any law enforcement agencies investigating or prosecuting El Rukns.

There is no doubt that a former police official or prosecuting attorney may be so consumed by the passion of pursuit against a particular organization that as a judge, he or she would possess an unacceptable bias against anyone accused or suspected of membership. Frankly, a police official or prosecuting attorney so consumed by the passion of pursuit would be the wrong person even to investigate or prosecute anyone accused or suspected of membership in the group.

But it cannot be assumed or inferred from prior participation in an investigation of an organization that bias exists against anyone accused of knowingly participating in the criminal acts of the organization.

When a law enforcement professional, be he Attorney General, a prosecutor, or a

policeman on the beat, takes action within the scope of his authority against a person, based on a reasonable belief that the person might be violating the law, and supported by whatever degree of probable cause the law may require in the circumstances, such action by itself does not support an inference that the professional harbors some personal bias or prejudice against the person. Law enforcement professionals typically take action against a wide variety of persons during their careers, motivated by nothing more than a desire to carry out the duties of their offices. Even a series of actions against a person according to a plan is not enough in itself to show bias or prejudice; such activity is perfectly compatible with personally disinterested professional motivation.

Balistrieri, 779 F.2d at 1201.

Many judges who prosecuted organized crime cases hear organized crime cases. There is no precedent for requiring the recusal of a judge in these circumstances. In fact, recusal under similar circumstances has been found unwarranted. In Balistrieri, the Court of Appeals found no obligation for the district court to recuse itself where the judge had, as the state's attorney general, believed the defendant was head of a criminal organization, announced that belief and acted on it on numerous occasions. Balistrieri, 779 F.2d 1191.

"The disqualification of a judge for actual bias or prejudice is a serious matter, and it should be required only when the bias or prejudice is proved by compelling evidence." Balistrieri, 779 F.2d at 1202. Mr. Robinson has not satisfied his burden. The standard of proof

under § 455(b)(1) is whether a reasonable person would be convinced that the judge is biased. Id. I find a reasonable person would not find bias in this case because I was not personally involved in the investigation of the security guard case and that case is not connected to the present charges against Mr. Robinson and other defendants. Furthermore, under § 455(a) Mr. Robinson has not alleged sufficient facts to establish even an appearance of bias. Liteky v. United States, 114 S.Ct. 1147, 1154 (1994).

Assuming Mr. Robinson filed an appropriate § 144 affidavit, there is no evidence of actual personal bias even when accepting as true all his factual allegations and setting aside my own personal knowledge and credibility determinations. Mr. Robinson's affidavit is filled with opinions and conclusions that the 1986 investigation was targeted directly against him, was retaliatory and was a result of personal animus. I do not have to accept these conclusions. United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir. 1990). Mr. Robinson makes the following factual allegations which I must accept as true: that I was the Director of the State Police at the time of the security guard case investigation, I made the comments discussed above in a press conference, and the investigation was under the supervision and direction of a department whose head I was.

Based on these factual allegations, a reasonable person still could not find that I am biased against Mr. Robinson. The facts do not demonstrate that I conducted any personal campaign aimed directly at Mr. Robinson, nor do the facts indicate any personal dislike or hatred for any of the defendants on my part. Mr. Robinson has failed to show that I hold some personal animus or malice towards him that I would not be able to entirely set aside in judging his case. Therefore, his affidavit does not compel recusal even under § 144 when all its factual averments

are assumed to be true.

## Conclusion

The defendants here were not the defendants in 1986. The defendants here were never arrested by the State Police when I was its Director. I do not believe any defendant concedes membership in the El Rukns and even if one did, it does not mean a judge in my position would be biased on the question of whether they are guilty of the charge proffered against them here.

The fact that a judge has once accused John Doe of committing an offense as part of a criminal investigation does not require recusal from the case of Richard Roe accused of a different act even if Roe is Doe's relative, friend or associate.

As before, I must search my conscience to determine whether I have a personal bias against anyone accused of criminal association with the El Rukns or in favor of any persons who investigate the El Rukns. I have done so and I do not.

The motions to recuse are denied.

Enter:

_____
James B. Zagel
United States District Judge

Date: _____